# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| **Plaintiff,** | § | |
| v. | § | |
| | § | |
| SAM KANE BEEF PROCESSORS, LLC, | § | |
| **Defendant,** | § | |
| | § | |
| and | § | CIVIL ACTION NO. 2:18-cv-171 |
| | § | |
| AMIGOS BEEF CATTLE COMPANY, LLC, | § | |
| CAL-TEX FEEDYARD, INC., | § | |
| CARRIZO FEEDERS, LTD., | § | |
| CHAPARRAL FEEDERS, INC., | § | |
| CHARCO CATTLE FEEDERS, | § | |
| DAWN CUSTOM CATTLE FEEDERS, INC., | § | |
| DRISKILL FEEDYARD, INC., | § | |
| GRAHAM LAND AND CATTLE COMPANY, | § | |
| IMMEL FEEDYARD, | § | |
| LIPAN CATTLE FEEDERS, LLC, | § | |
| LIVE OAK FEEDLOT, INC., | § | |
| LIVESTOCK INVESTORS, LTD. D/B/A | § | |
| BAR G FEEDYARD, LUBBOCK FEEDERS, LLC, | § | |
| LUCKEY CUSTOM FEEDLOT, INC., | § | |
| MCDONALD BAR 6 FEEDLOT, | § | |
| MORALES FEED LOTS, INC., | § | |
| RUNNELLS PETERS FEEDYARDS, LLC, | § | |
| SANTA FE FEEDERS, LTD., | § | |
| SHEARRER FEEDLOT, INC., | § | |
| STARR FEEDYARDS, LTD., and | § | |
| TEXANA FEEDERS, LTD., | § | |
| **Intervenors,** | § | |
| v. | § | |
| | § | |
| KANE BEEF PROCESSORS, LLC, | § | |
| MARAPRO, LLC, PROALAMO FOODS, L.L.C., | § | |
| PROVALLEY FOODS, L.L.C., PROCOASTAL, | § | |
| L.L.C., MARQUETTE TRANSPORTATION | § | |
| FINANCE, LLC, DBA MARQUETTE | § | |
| COMMERCIAL FINANCE, LLC, RABO | § | |
| AGRIFINANCE, LLC, TAAG AMERICAS, LLC, | § | |
| ALFREDO FERNANDEZ, INDIVIDUALLY, | § | |
| AND CARLOS FERNANDEZ, INDIVIDUALLY, | § | |
| **Defendants.** | § | |

## <u>Intervention and Complaint</u>

TO THE HONORABLE COURT:

This intervention complaint is filed by Amigos Beef Cattle Company, LLC, Cal-Tex Feedyard, Inc., Carrizo Feeders, Ltd., Chaparral Feeders, Inc., Charco Cattle Feeders, Dawn Custom Cattle Feeders, Inc., Driskill Feedyard, Inc., Graham Land and Cattle Company, Immel Feedyard, Lipan Cattle Feeders, LLC, Live Oak Feedlot, Inc., Livestock Investors, Ltd. d/b/a Bar G Feedyard, Lubbock Feeders, LLC, Luckey Custom Feedlot, Inc., McDonald Bar 6 Feedlot, Morales Feed Lots, Inc., Runnells Peters Feedyards, LLC, Santa Fe Feeders, Ltd., Shearrer Feedlot, Inc., Starr Feedyards, Ltd., and Texana Feeders, Ltd. (collectively "Intervenors" or the "Unpaid Cattle Sellers"), and names as Defendants Kane Beef Processors, LLC, Marapro, LLC, ProValley Foods, L.L.C., ProAlamo Foods, L.L.C., ProCoastal, L.L.C., Marquette Transportation Finance, LLC d/b/a Marquette Commercial Finance, LLC, Rabo Agri-Finance, LLC, Taag Americas, LLC, Alfredo Fernandez, Individually, and Carlos Fernandez, Individually (collectively "Defendants") and seeks the emergency appointment of a receiver, related injunctive relief, and additional relief all as requested and on the grounds set forth herein.

## I.
### COMPLAINT IN INTERVENTION

1.      Pursuant to Rule 24 of the Federal Rule of Civil Procedure, Amigos Beef Cattle Company, LLC, Cal-Tex Feedyard, Inc., Carrizo Feeders, Ltd., Chaparral Feeders, Inc., Charco Cattle Feeders, Dawn Custom Cattle Feeders, Inc., Driskill Feedyard, Inc., Graham Land and Cattle Company, Immel Feedyard, Lipan Cattle Feeders, LLC, Live Oak Feedlot, Inc., Livestock Investors, Ltd. d/b/a Bar G Feedyard, Lubbock Feeders, LLC, Luckey Custom Feedlot, Inc., McDonald Bar 6 Feedlot, Morales Feed Lots, Inc., Runnells Peters Feedyards, LLC, Santa Fe Feeders, Ltd., Shearrer Feedlot, Inc., Starr Feedyards, Ltd., and Texana Feeders, Ltd. (collectively

"Intervenors" or the "Unpaid Cattle Sellers"), have standing to intervene in this cause pursuant to Federal Rule of Civil Procedure 24(a) and have an interest relating to the transaction that is the subject of this action, and are so situated that disposition of the action may, as a practical matter, impair or impede their ability to protect their interest.

2.      Alternatively, Intervenors have standing to intervene into this case pursuant to Federal Rule of Civil Procedure 24(b) because they have a claim or defense that shares with the main action a common question of law or fact.

3.      This Court is a proper venue for this action under 28 U.S.C.A. §1397 because Kane Beef Processors, LLC, does business in the Southern District of Texas and therefore "resides" in the district for purposes of 28 U.S.C. §1391 and 28 U.S.C. §1335.

## II.
### PARTIES

4.      Amigos Beef Cattle Company, LLC operates a commercial cattle feeding facility which provides feed and care for cattle to prepare them for sale as fed or finished fed or finished cattle to slaughterhouses (also called "packers").  In the ordinary course of its business it sold and delivered cattle to Defendant Kane.

5.      Cal-Tex Feedyard, Inc. operates a commercial cattle feeding facility which provides feed and care for cattle to prepare them for sale as fed or finished fed or finished cattle to slaughterhouses (also called "packers").  In the ordinary course of its business it sold and delivered cattle to Defendant Kane.

6.      Carrizo Feeders, Ltd., operates a commercial cattle feeding facility which provides feed and care for cattle to prepare them for sale as fed or finished cattle to slaughterhouses (also called "packers").  In the ordinary course of its business it sold and delivered cattle to Defendant Kane.

7.     Chaparral Feeders, Inc. operates a commercial cattle feeding facility which provides feed and care for cattle to prepare them for sale as fed or finished cattle to slaughterhouses (also called "packers").  In the ordinary course of its business it sold and delivered cattle to Defendant Kane.

8.     Charco Cattle Feeders operates a commercial cattle feeding facility which provides feed and care for cattle to prepare them for sale as fed or finished cattle to slaughterhouses (also called "packers").  In the ordinary course of its business it sold and delivered cattle to Defendant Kane.

9.     Dawn Custom Cattle Feeders, Inc. operates a commercial cattle feeding facility which provides feed and care for cattle to prepare them for sale as fed or finished cattle to slaughterhouses (also called "packers").  In the ordinary course of its business it sold and delivered cattle to Defendant Kane.

10.    Driskill Feedyard, Inc. operates a commercial cattle feeding facility which provides feed and care for cattle to prepare them for sale as fed or finished cattle to slaughterhouses (also called "packers").  In the ordinary course of its business it sold and delivered cattle to Defendant Kane.

11.    Graham Land and Cattle Company a operates commercial cattle feeding facility which provides feed and care for cattle to prepare them for sale as fed or finished cattle to slaughterhouses (also called "packers").  In the ordinary course of its business it sold and delivered cattle to Defendant Kane.

12.    Immel Feedyard operates a commercial cattle feeding facility which provides feed and care for cattle to prepare them for sale as fed or finished cattle to slaughterhouses (also called "packers").  In the ordinary course of its business it sold and delivered cattle to Defendant Kane.

13.     Lipan Cattle Feeders, LLC operates a commercial cattle feeding facility which provides feed and care for cattle to prepare them for sale as fed or finished cattle to slaughterhouses (also called "packers").   In the ordinary course of its business it sold and delivered cattle to Defendant Kane.

14.     Live Oak Feedlot, Inc. operates a commercial cattle feeding facility which provides feed and care for cattle to prepare them for sale as fed or finished cattle to slaughterhouses (also called "packers").   In the ordinary course of its business it sold and delivered cattle to Defendant Kane.

15.     Livestock Investors, Ltd. d/b/a Bar G Feedyard operates a commercial cattle feeding facility which provides feed and care for cattle to prepare them for sale as fed or finished cattle to slaughterhouses (also called "packers").   In the ordinary course of its business it sold and delivered cattle to Defendant Kane.

16.     Lubbock Feeders, LLC operates a commercial cattle feeding facility which provides feed and care for cattle to prepare them for sale as fed or finished cattle to slaughterhouses (also called "packers").   In the ordinary course of its business it sold and delivered cattle to Defendant Kane.

17.     Luckey Custom Feedlot, Inc. operates a commercial cattle feeding facility which provides feed and care for cattle to prepare them for sale as fed or finished cattle to slaughterhouses (also called "packers").   In the ordinary course of its business it sold and delivered cattle to Defendant Kane.

18.     McDonald Bar 6 Feedlot operates a commercial cattle feeding facility which provides feed and care for cattle to prepare them for sale as fed or finished cattle to slaughterhouses

(also called "packers").  In the ordinary course of its business it sold and delivered cattle to Defendant Kane.

19.     Morales Feed Lots, Inc. operates a commercial cattle feeding facility which provides feed and care for cattle to prepare them for sale as fed or finished cattle to slaughterhouses (also called "packers").  In the ordinary course of its business it sold and delivered cattle to Defendant Kane.

20.     Runnells Peters Feedyards, LLC operates a commercial cattle feeding facility which provides feed and care for cattle to prepare them for sale as fed or finished cattle to slaughterhouses (also called "packers").  In the ordinary course of its business it sold and delivered cattle to Defendant Kane.

21.     Santa Fe Feeders, Ltd. operates a commercial cattle feeding facility which provides feed and care for cattle to prepare them for sale as fed or finished cattle to slaughterhouses (also called "packers").  In the ordinary course of its business it sold and delivered cattle to Defendant Kane.

22.     Shearrer Feedlot, Inc. operates a commercial cattle feeding facility which provides feed and care for cattle to prepare them for sale as fed or finished cattle to slaughterhouses (also called "packers").  In the ordinary course of its business it sold and delivered cattle to Defendant Kane.

23.     Starr Feedyards, Ltd. operates a commercial cattle feeding facility which provides feed and care for cattle to prepare them for sale as fed or finished cattle to slaughterhouses (also called "packers").  In the ordinary course of its business it sold and delivered cattle to Defendant Kane.

29008-0504 67A5823v1

24. Texana Feeders, Ltd. operates a commercial cattle feeding facility which provides feed and care for cattle to prepare them for sale as fed or finished cattle to slaughterhouses (also called "packers"). In the ordinary course of its business it sold and delivered cattle to Defendant Kane.

25. Kane Beef Processors, LLC ("Kane") is a limited liability company organized under the laws of the state of Texas. Kane Beef Processors, LLC owns and operates the processing plant located at 9001 Leopard St. Corpus Christi, Texas 78409 (the "Processing Plant"). Kane is authorized to do business in Texas and may be served with process by serving its registered agent, Frank E. Barker. Service of summons on Kane Beef Processors, LLC may be made by certified mail, return receipt requested addressed to its registered agent, Frank E. Barker, whose address is 555 N. Carancahua, Suite 1200, Corpus Christi, Texas 78401-0843, all in accordance with Fed. R. Civ. P. 4(e)(1).

26. Marapro, LLC ("Marapro") is a limited liability company organized under the laws of the state of Texas. Upon information and belief, Marapro, LLC is manager of Defendants ProValley Foods, L.L.C., ProAlamo Foods, L.L.C., and ProCoastal, L.L.C. Marapro, LLC is a distribution center located at 9001 Leopard Street, Corpus Christi, Texas 78409-2502. Marapro, LLC is authorized to do business in Texas and may be served with process by serving its registered agent, Frank E. Barker. Service of summons on Marapro, LLC may be made by certified mail, return receipt requested addressed to its registered agent, Frank E. Barker, whose address is 555 N. Carancahua, Suite 1200, Corpus Christi, Texas 78401-0843, all in accordance with Fed. R. Civ. P. 4(e)(1).

27. ProValley Foods, L.L.C. is a limited liability company organized under the laws of the state of Texas. ProValley Foods, L.L.C. may be served with process by serving its registered

agent, F. Edward Parker.  Service of summons on ProValley Foods, L.L.C. may be made by certified mail, return receipt requested addressed to its registered agent F. Edward Parker at 555 N. Carancahua, Ste. 1200, Corpus Christi, TX 78401, all in accordance with Fed. R. Civ. P. 4(e)(1).

28.     ProAlamo Foods, L.L.C. is a limited liability company organized under the laws of the state of Texas.  ProAlamo Foods, L.L.C. may be served with process by serving its registered agent, F. Edward Parker.  Service of summons on ProAlamo Foods, L.L.C. may be made by certified mail, return receipt requested addressed to its registered agent F. Edward Parker at 555 N. Carancahua, Ste. 1200 Corpus Christi, TX 78401, all in accordance with Fed. R. Civ. P. 4(e)(1).

29.     ProCoastal, L.L.C. is a limited liability company organized under the laws of the state of Texas.  ProCoastal, L.L.C. may be served with process by serving its registered agent, F. Edward Parker.  Service of summons on ProCoastal, L.L.C. may be made by certified mail, return receipt requested addressed to its registered agent F. Edward Parker at 555 N. Carancahua, Ste. 1200 Corpus Christi, Texas 78401, all in accordance with Fed. R. Civ. P. 4(e)(1).

30.     Marquette Transportation Finance, LLC d/b/a Marquette Commercial Finance, LLC ("Marquette") is a corporation organized under the laws of the state of Missouri.  Marquette is authorized to do business in Texas and may be served with process by serving its registered agent, National Registered Agents, Inc.  Service of summons on Marquette Commercial Finance, a division of Marquette Transportation Finance, LLC may be made by certified mail, return receipt requested addressed to its registered agent National Registered Agents, Inc. at 1999 Bryan St., Ste. 900, Dallas, Texas 75201, all in accordance with Fed. R. Civ. P. 4(e)(1).

31.     Rabo AgriFinance, LLC ("Rabo") is a limited liability company organized under the laws of the State of Delaware, with its corporate office at One City Place Drive, Ste. 200, St. Louis, Missouri, 63141, and a regional office at 1309 Technology Parkway, Cedar Falls, Iowa, 50613.

Rabo is authorized to do business in Texas and may be served with process by serving its registered agent, Corporate Creations Network Inc. Service of summons on Rabo AgriFinance, LLC may be made by certified mail, return receipt requested addressed to its registered agent Corporate Creations Network Inc. at 2425 W. Loop South, #200, Houston, Texas 77027, all in accordance with Fed. R. Civ. P. 4(e)(1).

32.     Taag Americas, LLC ("Taag Americas"), upon information and belief, is a limited liability company organized under the laws of the State of Florida, with its principal office at 20200 W. Dixie Highway, # 602, Aventura, Florida 33180. Taag Americas, LLC, owns one hundred percent of the interests of Kane Beef. Taag Americas, LLC, may be served with process by serving the Texas Secretary of State at 1019 Brazos Street, Austin, Texas 78701, as its agent for service because Taag Americas engages in business in Texas but has not designated or maintained a resident agent for service of process in Texas.

33.     Alfredo Fernandez ("A. Fernandez"), upon information and belief, is a resident of Venezuela and is or was an officer, director, member, or shareholder of Kane and in a position to control Kane at all times relevant to this action. A. Fernandez is listed as Chairman of the Fernandez Holding Group, the parent company of Sam Kane Beef Processors, LLC on Kane's web site. A. Fernandez is listed as Chairman of Kane on its Certificate of Formation filed with the Secretary of State of Texas; and is an individual doing business in the state of Texas. A. Fernandez is listed as a managing member of Taag Americas, LLC with the Florida Secretary of State. Service of summons on Alfredo Fernandez may be made by personal service at 9001 Leopard St. Corpus Christi, Texas 78409 and/or 20200 W. Dixie Highway, # 602, Aventura, Florida 33180, all in accordance with Fed. R. Civ. P. 4(e)(1).

34.    Carlos Fernandez ("C. Fernandez"), upon information and belief, is a resident of Venezuela and is or was an officer, director, member, or shareholder of Kane and in a position to control Kane at all times relevant to this action.  C. Fernandez is listed as Vice Chairman of Kane on its Certificate of Formation filed with the Secretary of State of Texas; and is an individual doing business in the state of Texas.  C. Fernandez is listed as a managing member of Taag Americas, LLC with the Florida Secretary of State.  Service of summons on C. Fernandez may be made by personal service at 9001 Leopard St. Corpus Christi, Texas 78409 and/or 20200 W. Dixie Highway, # 602, Aventura, Florida 33180, all in accordance with Fed. R. Civ. P. 4(e)(1).

35.    All conditions precedent to the filing of this action have been fulfilled or have been waived.

## III.
### JURISDICTION

36.    This Court has original jurisdiction over the subject matter of the action brought by Plaintiff the United States of America, and has original jurisdiction of the claims of Intervenors brought in this case pursuant to the United States Packer and Stockyards Act ("PASA"), 7 U.S.C. § 181, et seq and the statutory trust created thereunder (the "PASA Trust").  This Court has supplemental jurisdiction over all other claims that are so related to the claims in this action that they form part of the same case or controversy under Article III of the United States Constitution, as provided by 28 USC § 1367.

37.    The District Court has jurisdiction over this civil action arising under PASA, 7 U.S.C. § 209(b)(2), pursuant to 28 U.S.C. § 1331.

38.    The District Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1337 because PASA qualifies as an "Act of Congress regulating commerce" and

several of Intervenors' claims herein arise under 7 U.S.C. § 209, 7 U.S.C. § 228b, and 7 U.S.C. § 181 *et seq.*

39.     The acts of all Defendants the subject of this suit involve their purposeful contacts involving Texas.  The causes of action asserted in this case arise from or are connected with the acts committed by Defendants in Texas.  As a result, this Court can assert in personam jurisdiction over any foreign Defendants in accordance with state and federal constitutional guarantees, and the Texas Secretary of State is an agent for service of process for Defendants.

40.     Further, this Court has *in rem* jurisdiction over the assets upon which Intervenors make claims as such assets are part of the *res* of the statutory PASA Trust assets held by Defendant Kane or received by the other Defendants.

## IV.
### FACTS

41.     Each of the Intervenors has on its own account and for the benefit of its customers, regularly sold cattle to Kane in the ordinary course of its business and the business of Kane.

42.     Each of the Intervenors has delivered cattle to Kane for which they have not received payment.

43.     Each of the Intervenors have filed a timely written claim, or claims, with the United States Department of Agriculture and Kane in order to protect and preserve its rights under § 206(b) of the Packers and Stockyards Act, 7 U.S.C. § 196(b), which provides for a packer trust (the "Trust") for the benefit of unpaid cash sellers of livestock.   The assets of the trust include all livestock purchased by a packer in cash sales, and all inventories of, or receivables or proceeds from meat, meat food products, or livestock products derived therefrom (the "Trust Assets").  Each of the Intervenors has perfected their rights in the PASA trust assets of Kane by sending the trust notice required by PASA to both Kane and to the USDA.  All assets of Kane including livestock,

inventory and any proceeds of sale of them are considered part of the *res* of the PASA trust and such assets remain trust assets of Kane regardless of date of acquisition, for so long as Kane has had unpaid livestock suppliers.  For this reason, assets acquired prior to the date on which Intervenors' claims arose remain subject to the PASA trust.

44.     Each of the Unpaid Cattle Sellers is entitled to assert a statutory lien pursuant to Tex. Agric. Code Ann. § 148.021-028 for the unpaid purchase price, together with statutory damages, including reasonable attorneys' fees, and a senior priority lien on each animal sold, the carcass of the animal, products from the animal and proceeds from the sale of the animal, its carcass or its products (the "Collateral").

45.     The unpaid amount for cattle delivered to Kane by the Unpaid Sellers exceeds $35,000,000.00.

46.     On or about January 12, 2017, the United States Grain Inspection, Packers and Stockyards Administration ("GIPSA") filed a complaint against Kane for failure to pay livestock sellers when due under the Packers and Stockyards Act.  Kane agreed to cease and desist from failing to pay livestock sellers when due and agreed to the entry of a Consent Decision.  The Consent Decision became final and effective on January 27, 2017.  From and after that date Kane has failed to honor its agreement and the Order to pay livestock sellers when payment was due.

47.     Defendant Marquette is a secured lender of Defendant Kane and manages Kane's cash accounts, including its receivables which are subject to Intervenors' claims as trust beneficiaries and as statutory lien holders.  Marquette has used these proceeds to repay itself. Marquette claims a perfected security interest in certain assets of Kane that are subject to the PASA statutory trust.

48.     Defendant Rabo, based on public filings, appears to be a secured creditor of Kane with respect to real estate and associated fixtures, and also with respect to other intangible assets of Kane, possibly including Trust Assets and collateral of Intervenors pursuant to their statutory liens. On information and belief, Intervenors allege that Rabo has received Trust Assets or proceeds from Intervenors' statutory lien collateral.  Rabo claims collateral interests in certain assets of Kane that are subject to the PASA statutory trust.

49.     The claims of Marquette and Rabo are adverse to and conflicting with the claims of Intervenors.

50.     Marquette and Rabo, as lenders to Kane, a debtor subject to the PASA statutory trust, are deemed to be on constructive notice that all assets of Kane are subject to the trust for the benefit of unpaid suppliers such Intervenors.

51.     For some time, Marquette and Rabo have been on inquiry and actual notice that their lending customer, Kane, was not maintaining sufficient PASA trust assets freely available to pay its PASA creditors in a timely fashion.  Such inquiry notice dates back to at least January 2017, when the Kane entered into the Consent Decree described above.

52.     On or about July 5, 2018, Kane, Marquette, and most of the Intervenors signed a Term Sheet concerning the operations of Kane (the "Term Sheet").  Pursuant to the Term Sheet, Chris Daniel, an individual who has experience in the packing plant industry, was named and installed as "Chief Restructuring Officer" (the "CRO") of Kane.  Among other agreements, the Term Sheet provided:

> Kane Beef shall, at its sole cost and expense, retain the services of Chris Daniel (the **"Chief Restructuring Officer**, also the **"CRO"**), who shall assume such duties on the Effective Date.  The CRO shall: (i) report to all Parties; (ii) assume day to day operating responsibilities; (iii) cause Kane Beef's operations, from the Effective Date forward, to be in full compliance with the Packers and Stockyards Act of 1921 (the **"PSA"**); (iv) use his best efforts to bring Kane's cat-

tle purchases made prior to the Effective Date in compliance with the payment provisions of the PSA; (v) cause all other of Kane Beef's operations to continue to be in compliance with all other applicable provisions of the PSA; and (vi) act independently and in the best interests of the creditors of Kane Beef existing as of the Effective Date and not at the direction of any employee or representative of Kane Beef.

Notwithstanding the foregoing, the CRO shall not have the authority to take the following actions without providing at least ten (10) days' written notice to Kane Beef's existing managers, who are: (1) Alfredo Fernandez; (2) Manuel Fernandez; and (3) Chuck Jackson (the "Kane Managers"), and providing the Kane Managers a reasonable opportunity to consult with the CRO with respect to such proposed actions: (i) voluntarily consenting to the appointment of a receiver and (ii) voluntarily petitioning for bankruptcy. Furthermore, the CRO shall not approve or adopt, outside of a bankruptcy proceeding, a plan of merger through either a sale of substantially all of the assets of Kane Beef or a disposition of a majority of the voting interests in Kane Beef without the affirmative vote of a majority of the Kane Managers.

53.     On a regular basis, customers of Kane pay money to Kane which is deposited into a depository bank, believed to be BBVA Compass Bank, which is then forwarded electronically to Marquette. The customers of Kane who make these payments are receiving trust assets of Intervenors, primarily meat and boxed beef, and make payments of trust assets in return. The payments are trust funds of which Intervenors are beneficiaries and constitute collateral of Intervenors' statutory liens.–(These parties will be-collectively referred to as "Customers.")

54.     Kane also sells meat or boxed beef, or delivers meat and boxed beef, to related entities for further sale or distribution (the "Distribution Centers"). These entities are the following: Marapro, LLC, ProValley Foods, LLC, ProAlamo Foods, LLC, and ProCoastal, LLC. Upon information and belief, Intervenors allege that the Distribution Centers are owned or controlled by the same entity - Taag Americas, LLC - which owns Kane Beef, or they are owned or controlled by members of the same family which owns or controls Kane Beef, and have received substantial funds from Kane without reasonable and ordinary business purposes.

55.     The Customers and the Distribution Centers should be temporarily enjoined from making payment to Kane and instead instructed to make payment to the Receiver, and until such time as a Receiver is appointed to hold such funds until further direction and order from the court.

56.     The Distribution Centers should be ordered to make payment for all sums due to Kane into the Registry of this court on an immediate basis.

57.     Upon information and belief, at all relevant times, A. Fernandez and C. Fernandez exercised dominion and control over Kane, and have used and continue to use Kane and the assets of Kane, as well as the Trust Assets and Collateral, for their own purposes.

## V.
### COUNT I – VIOLATIONS OF THE PACKERS AND STOCKYARDS ACT

58.     The acts and omissions of Kane Beef, A. Fernandez, and C. Fernandez, the Distribution Center, and Taag Americas constitute violations of the Packers and Stockyards Act. See 7 U.S.C. § 181 et seq.

59.     Intervenors have been damaged by these violations of the PSA.

## VI.
### COUNT II – BREACH OF CONTRACT

60.     Kane Beef Processors has failed to perform its contractual duties pursuant to outstanding contracts with Intervenors and is, therefore, in breach of its contract with Intervenors.

61.     Intervenors have been damaged by Kane's breaches of contract and seek damages associated with such breach(es).

## VII.
### COUNT III – DECLARATORY JUDGMENT

62.     Intervenors seek a declaratory judgment against all Defendants pursuant to 28 U.S.C. §2201 & 2202. Specifically, Intervenors request the Court to declare that Intervenors' claim

to the Trust Assets and the Collateral is superior and prior to any other claimant to these assets, including the assets claimed as collateral by Rabo and Marquette.

## VIII.
### COUNT IV – ATTORNEY'S FEES AND COSTS

63.     Intervenors have engaged the services of the undersigned attorneys to file this action and have agreed to pay them a reasonable fee for their services.  Intervenors seek and are entitled to their attorney's fees and costs associated with this action.

## IX.
### CLAIMS AGAINST MARQUETTE FINANCIAL GROUP, INC.
### AND RABO AGRI-FINANCE COMPANY

64.     To the extent that Marquette Financial Group, Inc. ("Marquette") has received Trust Assets or Collateral, the full amount of such Trust Assets and Collateral should be disgorged from Marquette and paid to Intervenors.

65.     To the extent that Rabo Agri-Finance Company ("Rabo") has received Trust Assets or Collateral, the full amount of such assets should be disgorged from Rabo and paid to Intervenors.

## X.
### CLAIMS AGAINST DISTRIBUTION CENTERS

66.     The Distribution Centers have received Trust Assets either in the form of inventory of Kane, money, or both.

67.     The Distribution Centers are owned or controlled by Kane or by Kane's affiliates and are subject to the provisions of the Packer Trust and the Intervenors' statutory lien.

68.     The Distribution Centers owe funds to Kane or have possession of assets of Kane which should be delivered to the beneficiaries of the Trust Assets and Collateral, and until the case is resolved, should be directed by order of this Court to make payment to the registry of the court until appointment of a receiver, and thereafter, to the receiver until final judgment.

69.     To the extent that the Distribution Centers have received Trust Assets or Collateral, the full amount of such assets should be disgorged from the Distribution Centers and paid to Intervenors.

## XI.
### CLAIMS AGAINST ALFREDO FERNANDEZ, CARLOS FERNANDEZ AND TAAG AMERICAS

70.     Alfredo Fernandez, Carlos Fernandez, and Taag Americas were at all material times persons in control of the daily activities of Kane.

71.     Pursuant to 7 U.S.C. §§ 209 and 223, Alfredo Fernandez, Carlos Fernandez, and Taag Americas are trustees of the PASA Trust assets of Kane and therefore have personal liability to Intervenors to all damages suffered as a result of their failure to require Kane to make payment in accordance with the requirements of the Packers & Stockyards Act of 1921.

72.     In addition, as alleged above, at all relevant times, Alfredo Fernandez, Carlos Fernandez, and Taag Americas exercised dominion and control over Kane, and have used and continue to use Kane and the assets of Kane, as well as the Trust Assets, for their own purposes. As such Kane is the alter ego of Alfredo Fernandez, Carlos Fernandez, and Taag Americas, and the principals should be held personally liable for the conduct or debts of the entity.

73.     Alfredo Fernandez, Carlos Fernandez, and Taag Americas also owed and breached fiduciary duties to Intervenors, including failing to maintain PASA trust assets freely available to pay qualified PASA creditors, including Intervenors, for which Intervenors seek damages.

74.     As a direct and proximate cause of Alfredo Fernandez, Carlos Fernandez, and Taag Americas' wrongful conduct, Intervenors have been damaged in an amount in excess of $35,000,000.00, plus further interest.

75.     To the extent that Alfredo Fernandez, Carlos Fernandez, and or Taag Americas have received Trust Assets or Collateral, the full amount of such assets should be disgorged from them and paid to Intervenors.

## XII.
## CLAIMS AGAINST TAAG AMERICAS, LLC

76.     Taag Americas, LLC, owns one hundred percent of the interests of Kane Beef.

77.     Pursuant to 7 U.S.C. § 223, Taag Americas, LLC is liable for the acts and/or omissions of any agent, officer, or other person acting for or on behalf of the interests of Taag Americas, LLC.

78.     As a direct and proximate cause of the agents and/or officers of Taag Americas, LLC, Intervenors have been damaged in an amount in excess of $35,000,000.00, plus further interest. Taag Americas, LLC, owns one hundred percent of the interests of Kane Beef.

79.     To the extent that Taag Americas, LLC has received Trust Assets or Collateral, the full amount of such assets should be disgorged from it and paid to Intervenors.

## XIII.
## CONSPIRACY

80.     Additionally, and/or in the alternative and based on information and belief, Kane, A. Fernandez, C. Fernandez, the Distribution Centers, and Taag Americas had an agreement with and/or understanding among themselves to commit and to cover up the wrongs and damages inflicted on Intervenors, had a meeting of the minds and committed unlawful and overt acts which proximately caused further and additional damages to Intervenors.  Therefore, Kane, A. Fernandez, C. Fernandez, the Distribution Centers, and Taag Americas are directly and vicariously liable for the actions of each other in furtherance of this conspiracy.

81.      Intervenors seek judgment for all damages, both actual and punitive, that Intervenors suffered as a result of the actions of any of them.

82.      Intervenors seek judgment for their reasonable attorney fees at trial and through all applicable appellate levels.

## XIV.
### FORECLOSURE, SUIT FOR CONVERSION, DECLARATORY RELIEF AND DETERMINATION OF EXTENT, VALIDITY AND PRIORITY OF STATUTORY LIENS

83.      Intervenors incorporate the allegations stated above by reference.

84.      Intervenors are entitled to an order foreclosing their liens against the Collateral, for judgment against any party who received the Collateral and did not pay Intervenors, resulting in a conversion, and declaring the extent, validity, and priority of their statutory liens, and directing the sale of the Collateral, and payment of the sales proceeds to them.

## XV.
### APPLICATION FOR EMERGENCY APPOINTMENT OF RECEIVER AND RELATED INJUNCTIVE RELIEF

85.      Intervenors incorporate by reference the allegations set forth in Plaintiff, United States of America's complaint and request for receivership.  Intervenors agree with statements by Plaintiff that a receiver is needed for the protection of their interest in Trust Assets and Collateral, to prevent further dissipation of such assets and to preserve the remaining assets for the benefit of creditors under Federal Rules of Civil Procedure 65 (Injunctions & Restraining Orders) and 66 (Receivers) and applicable state law.

86.      By this Application for Emergency Appointment of Receiver and Related Injunctive Relief, Intervenors seek appointment of a Receiver to operate Defendant Kane's processing plant, and to prevent Defendant Kane from selling, concealing, disposing, transferring, wasting or destroying Intervenors' Trust Assets and Collateral.  There is an immediate danger that Defendant

Kane or other parties in possession could sell, conceal, dispose of, ill-treat, transfer, or waste these assets and/or remove any portion of them during pendency of this suit. As a result, Intervenors will suffer immediate and irreparable injury if relief is not granted, and Intervenors have no adequate remedy at law. Intervenors seek a temporary restraining order, restraining Kane, the Distribution Centers, Taag Americas, A. Fernandez, and C. Fernandez from transferring, selling, disposing, moving, concealing, wasting, or encumbering the property at issue, and that upon hearing and notice, the Court issue a temporary injunction enjoining the same. Alternatively, Intervenors seek a restraining order without notice and hearing.

87.     Intervenors also seek an order determining their interest in the Trust Assets and Collateral are valid and enforceable and awarding a judgment in favor of Intervenors against all other parties, for damages in the amount of any amounts owing them for unpaid cattle sales.

88.     Intervenors bring the Court's attention to the following facts in support of this request for the appointment of a receiver and for injunctive relief:

a. Upon information and belief, Kane has operated at significantly negative cash flow for at least two years;

b. Kane has been operating in violation of a Consent Decision issued by GIPSA;

c. Upon information and belief, Defendant Kane is currently behind in payments to vendors and other persons or entities providing labor, material and/or supplies for the operation of the business and has no cash on hand to make these payments in the future unless financing is provided and has dissipated PASA trust assets by failing to keep them freely available to pay the claims of PASA trust creditors such as Intervenors;

d. Upon information and belief, Trust Assets and Collateral have been paid to the Distribution Centers and to A. Fernandez and to C. Fernandez in violation of the Packers and Stockyards Act;

e. Upon information and belief, Defendant Kane is on "cash on delivery" or COD terms with all significant trade vendors;

f. Assets that are Trust Funds and Collateral are dissipating.

89.    Intervenors request the Court to appoint a receiver in this action who is qualified under the provisions of Fed. R. Civ. P. 66, or alternatively, under Tex. Civ. Prac. & Rem. Code, § 64.021.

90.    Intervenors request the appointment of Chris Daniel as the Receiver for the Collateral, the processing plant, the business operated thereon and all other real and personal property of Kane Beef related to the ownership and operation of such assets.  Mr. Daniel, if appointed as the Receiver, will immediately engage professionals, will provide necessary management services to Defendant Kane including, but not limited to, preservation and maintenance of the processing plant, the business operated thereon, and any trust assets or collateral located thereon, including, without limitation, the collection of accounts and other income.

91.    If appointed as the Receiver, Mr. Daniel will manage the day-to-day business of the processing plant and oversee the hiring of employees to operate the business, including former employees of Defendant.

92.    Intervenors have a probable interest in or right to the Trust Assets and the Collateral. The Trust Assets and Collateral include among other things, all of Kane's receivables, meat, carcasses, sale proceeds, assets which it purchased with these assets, and the products and proceeds thereof.  The Trust Assets and Collateral secure a debt in the amount of approximately $35,000,000.00 (excluding attorneys' fees and other expenses that it has incurred and that are recoverable pursuant to law) plus interest thereon, plus costs and expenses of collection and attorneys' fees incurred.

93.    The Trust Assets and Collateral which consist of meat products are in danger of being lost, removed, wasted or materially injured.  Kane has no funds of its own to properly care for this property.

94.     Receivers may be sought by "anyone showing an interest in certain property or a relation to the party in control or ownership therefore such as to justify conservation of the property by a court officer." *Netsphere, Inc. v. Baron*, 703 F.3d 296, 305 (5th Cir. 2012), or appointed to prevent fraud or protect rights of persons in property which is in danger of being lost or suffering material injury. *Ellis v. Filgo*, 185 S.W.2d 739 (Tex. Civ. App. –Dallas 1945, no writ).  Here, a receiver is appropriate to protect Intervenors' rights in the Trust Assets and Collateral and to prevent them from being further lost, removed, wasted or materially injured.

95.     Texas Civil Practice and Remedies Code allows a court of competent jurisdiction to appoint a receiver for the following purposes, among others, (a) in an action by a creditor to subject any property of fund to its claims; (b) in an action by a mortgagee for the foreclosure of a mortgage and sale of the mortgaged property it appears the mortgaged property is in danger of being lost, removed, or materially injured; or if the condition of the mortgage has not been performed and the property is probably insufficient to discharge the mortgage debt; (c) for a corporation that is insolvent, is in imminent danger of insolvency, has been dissolved, or has forfeited its corporate rights; or (d) in any other case in which a receiver may be appointed under the rules of equity.  Tex. Civ. Prac. & Rem. Code, §§ 64.001(a)(4), (5) and (6) and 64.001(c)(1) and (2).  This action is in part for the foreclosure and sale of the Collateral, and as set forth above, Kane Beef lacks sufficient financial resources to continue its operations and there is an immediate danger of the such property from being materially injured – thus satisfying the statutory ground set forth in Texas Civil Practice and Remedies Code §§ 64.001(a)(2), (4) (5) and (6), and § 64.001(c)(1).  To the extent that non-PASA trust assets are not sufficient to pay the fees and expenses of the proposed receiver, the Intervenors expressly consent to the payment of such expenses from PASA trust assets.

96.     Pursuant to Rule 65(c) of the Federal Rules of Civil Procedure, Intervenors request the Court fix the amount of a good and sufficient bond, to be approved by the clerk of the Court, conditioned as required by law.

97.     Finally, Intervenor Plaintiffs request that the court fix the amount of a good and sufficient receiver's bond as may be required by law.

98.     Intervenors request the appointment of a receiver because the status of the property for which Intervenors seek a receiver cannot be maintained and the rights of Intervenors cannot be protected by any remedy less drastic than a receivership.  In the alternative, Intervenors request an expedited hearing on their application for appointment of receiver at the earliest possible time with or without notice to Kane.

## XVI.
### INJUNCTION AND RESTRAINING ORDER

99.     Intervenors incorporate the allegations stated above, as if fully set forth verbatim hereunder, and incorporates the exhibits referenced therein.

100.    Pending the final outcome of this action, and until further order, and for the purpose of affording Intervenors appropriate protection under the Federal Rules of Civil Procedure, Intervenors request the issuance of a mandatory injunction and restraining order directing Kane to deliver the processing plant, the Trust Assets and the Collateral to the Receiver and restraining Kane, the Distribution Centers, A. Fernandez, C. Fernandez, Taag Americas, and their partners, officers, agents, servants, employees, attorneys or associates from using, selling, disposing, encumbering, mortgaging, leasing, moving, operating, pledging, or in any manner adversely affecting the interests of Intervenors in the Trust Assets or the Collateral.

101.     If Kane is permitted to stay in possession and if the injunctive relief requested is not granted, then Intervenors will be irreparably harmed.  Intervenors have no adequate remedy at law if such relief is not granted.

102.     If the Court does not appoint a Receiver, and if Kane is permitted to stay in possession or control of its assets, Intervenors also request the Court to grant additional relief protecting Intervenors' interest and liens as follows:

a.     prohibiting any payments or distributions to or for the benefit of Kane's directors, officers, shareholders (except to the extent employed by the Receiver), or any of Kane's insiders, affiliates, parents or partners or other related individuals or entities for management services, commissions or otherwise;

b.     requiring any management or other fees that are paid to any person or entity to be approved in advance by Intervenor or the Court as reasonable in light of the nature and extent of the management services required for property such as the processing plant and the business operated thereon;

c.     requiring Kane to furnish Intervenors, without further demand, the following information:

i.     current rent rolls and a complete inventory of its material assets;

ii.     copy of all current leases and other material contracts;

iii.     a current profit and loss statement and a current balance sheet;

iv.     within 15 days, a reasonable 13-week weekly budget of projected and itemized cash inflows and outflows, and a reasonable 30, 60, 120-day and 12-month budget of projected income, cash flow and expenses, which budget should be subject to prior approval of Intervenors or the Court and in any event prepared in accordance with Generally Accepted Accounting Principles;

v.     on a monthly basis, financial statements in a form to be approved by Intervenors or the Court, to include at a minimum a balance sheet, an income statement, and a statement of cash flow;

vi.     on a prompt and regular basis, not less than daily, its internally generated operating reports, and including herd counts; and

vii.     on a monthly basis, a ledger showing all outstanding accounts receivable, accounts payable aging and a check register;

      d.      requiring Kane to furnish to Intervenors proof that all hazard liability, and other insurance are in full force and effect and further requiring Kane to continue to maintain such insurance coverage and further, that such insurance include the Intervenors as named insured, mortgagee and lender loss payee;

      e.      requiring Kane to provide to Intevenors, or their authorized agents or representatives, immediate and ongoing access to inspect the processing plant and other Collateral for appraisal or, access to the business and financial books and records kept or maintained in connection with the operation of Kane's business upon reasonable prior notice; and

      f.      requiring or specifying such other terms or conditions as may be necessary to adequately protect Intervenors.

103.    The PASA trust assets of Defendants, Kane, the Distribution Centers, A. Fernandez, C. Fernandez, Taag Americas themselves are PASA assets which belong to Intervenors and therefore should serve as security fo the issuance of the injunctive relief requested herein.

<u>**REQUEST FOR RELIEF**</u>

WHEREFORE, Intervenors request that the Court enter an order:

      a.      Appointing Chris Daniel as the Receiver for Kane Beef, the Trust Assets, and the Collateral for the purposes stated above, and all other real and personal property of Kane related to the ownership and operation of such assets, vesting him with all necessary rights and duties and authorizing him to, among other things:

      i. manage, preserve, and maintain Defendant Kane's business, and any trust assets and collateral located thereon (whether same is owned by Defendant Kane);

      ii. operate Defendant Kane's business, collect the accounts receivable and other income derived from the business, and pay all reasonable and necessary operating expenses arising after his or her appointment in the ordinary course of business in connection with the operation and management of the business, and retain any net cash flow to be turned over;

      iii. if deemed necessary in the judgment of the Receiver, employ legal counsel;

      iv. enter into such contracts or leases with vendors or lessors of goods and services or hire such employees in connection with the normal operation and management of the business conducted thereon as the Receiver may deem necessary, including without limitation a management contract; and

v.   take all other actions reasonably required to preserve, protect, or enhance the value of the business operated by Kane Beef and any personal property located thereon (whether same is owned by Defendant Kane); or

b.      directing that Intervenors be afforded the protection set out herein and granting such other and further relief as may be necessary or appropriate to protect Intervenors security interests and liens in or the business operated thereon and any personal property located thereon (whether same is owned by Defendant Kane), including the rents, proceeds, and accounts receivable;

c.      ascertaining the amount of money due Intervenors for principal and interest on the Trust Assets and Collateral and for all other amounts due thereunder including abstracting, taxes, expenses and all collection and foreclosure expenses, including attorneys' fees, that Intervenors is entitled to recover plus interest thereon;

e.      decreeing that Intervenors have a lien on the Collateral for the sum of money found to be due Intervenors;

f.      decreeing that the claims of Intervenors to the Trust Assets and Collateral are superior and paramount to all liens, rights, title and interest of Defendant Kane, or any party claiming by, through, under or against Defendant Kane, including without limitation Marquette and Rabo, and that such liens, rights, title or interest of any such party be forever barred and foreclosed;

g.      retaining jurisdiction of this action in order to make any and all further orders and judgments as may be necessary and proper, including the issuance of a writ of possession and the entry of a deficiency decree, when and if such deficiency decree shall appear proper; and

h.      granting such other and further relief as Intervenors may be entitled to receive.

## CONCLUSION AND PRAYER

104.    FOR THE FOREGOING REASONS, Intervenors, hereby request that the Court issue process for all opposing parties, and upon final hearing of this case, grant relief requested above, injunctive relief, appointment of receiver, damages, and such other and further relief to which they may be justly entitled.

Respectfully submitted,

**Lead Counsel:**

**NAMAN HOWELL SMITH & LEE, PLLC**
8310 N. Capital of Texas Hwy., Suite 490
Austin, Texas  78731
512.479.0300; 512.474.1901 (facsimile)
**Email:  dlebas@namanhowell.com**

By:  /s/ David L. LeBas
    David L. LeBas
    State Bar No. 12098600

**Stokes Law Office, LLP**
3330 Oakwell Court, Suite 225
San Antonio, Texas, 78218
210.804.0011; 210.822.2595 (facsimile)
**Email:  cstples@stokeslawoffice.com**

By:  /s/ Craig A. Stokes
    Craig A. Stokes
    State Bar No. 19267700

And,

**FLOOD & FLOOD**
802 N. Carancahua, Suite 900
Corpus Christi, Texas 78401
Telephone:  (361) 654-8877
**Email:  john@floodandflood.com**

By: /s/ John Flood
    John Flood
    State Bar No. 07155910

**ATTORNEYS FOR INTERVENOR PLAINTIFFS**

## Certificate of Service

This is to certify that a true and correct copy of the foregoing was delivered via electronic filing with the Clerk of the Court using the CM/ECF system which will send notification of such efiling on this the 19th day of July, 2018, to all counsel of record.

/s/ David L. LeBas
David L. LeBas

## VERIFICATION

STATE OF TEXAS            )
                                   )
COUNTY OF __Wilson__      )

     I, Jason Peeler, declare under penalty of perjury that I am the __Owner__ for __Texana Feeders LTD__, a limited partnership company, who is an Intervenor Plaintiff in this proceeding; that I have read the foregoing pleading; and that the fact statements contained therein are within my personal knowledge and are true and correct to the best of my knowledge, information, or belief.

                            Texana Feeders LTD

By: _____
Printed Name: __Jason Peeler__
Its __Owner__

Subscribed and sworn to before me on this the **19** day of __July__, 2018.

_____
Notary Public
Notary ID: __12653363-3__

(seal)

PATRICIA LASKOWSKI
Notary Public, STATE OF TEXAS
My Commission
Expires 07/20/2020
I.D.# 12653363-3