IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

UNITED STATES OF AMERICA,
Plaintiff,

v.                                          CIVIL ACTION NO. 2:18-cv-171

SAM KANE BEEF PROCESSORS, LLC,
Defendant.

and

HOWELL CATTLE CO., LP, AGENT FOR
JWH CATTLE, LLC,
Intervenor

v.

SAM KANE BEEF PROCESSORS, LLC,
and
MARQUETTE COMMERCIAL FINANCE,
A DIVISION OF MARQUETTE TRANSPORTATION FINANCE, LLC,
Defendants.

**COMPLAINT IN INTERVENTION OF HOWELL CATTLE COMPANY, LP,**

**AGENT FOR JWH CATTLE, LLC**

Plaintiff Howell Cattle Company, LP (Howell Cattle), as agent for JWH Cattle, LLC, files this complaint in intervention, complaining of Defendants Sam Kane Beef Processors, LLC (Kane Beef) and Marquette Commercial Finance, a division of Marquette Transportation Finance, LLC (Marquette), and for cause of action would show:

**PLAINTIFF**

1.      Plaintiff Howell Cattle is a Texas Limited Partnership, with its principal place of business at 3306 CR 420, Premont, Texas 78375.  Howell Cattle brings this action in its capacity as agent for JWH Cattle, LLC (JWH), a Texas limited liability company, whose principal place of business is also at 3306 CR 420, Premont, TX 78375.  Howell Cattle operates a feed yard in South Texas.  JWH is its sole cattle-feeding customer.  JWH owns all of the cattle in the HCC feed yard and pays Howell Cattle to feed and care for them until they attain an appropriate slaughter weight.  When cattle are of a weight appropriate for slaughter, Howell Cattle, as agent for JWH, sells them to a meat packer, such as Kane Beef, and remits the proceeds of sale to JWH.  Howell Cattle and JWH have common ownership and control.

## DEFENDANTS

2.      Defendant Kane is a Texas limited liability company and may be served with process by mailing a summons and copy of this complaint, via certified mail, return receipt requested, to its registered agent for process, Frank E. Barker, 555 N. Carancahua, Suite 1200, Corpus Christi, Texas 78401-0843.

3.      Defendant Marquette is a Missouri corporation and may be served with process by mailing a summons and copy of this complaint, via certified mail, return receipt requested, to its registered agent for process in Texas, National Registered Agents, Inc., 1999 Bryan St., Suite 900, Dallas, Texas 75201.

4.      Taag Americas, LLC (Taag) is a Florida limited liability company with its principal office at 20200 W. Dixie Highway, Suite 602, Aventura, Florida 33180.  On information and belief, Kane Beef is owned 100% by Taag, which in turn is owned 100%

by Alfredo Fernandez, Carlos Fernandez and, on information and belief, other members of the Fernandez family.  Taag may be served with process by mailing a summons and copy of this complaint, via certified mail, return receipt requested, to its registered agent, Alfredo Fernandez, 20200 W. Dixie Highway, Suite 602, Aventura, Florida 33180.

5. Alfredo Fernandez (A. Fernandez) is, on information and belief, a Venezuelan national living in the United States.  He is Kane Beef's board chairman and one of its control persons.  He and possibly other members of his family own all of Kane Beef, directly or indirectly through other Fernandez-owned entities, including Taag.  He may be served with process by mailing a summons and copy of this complaint via certified mail, return receipt requested, to his attention at his business address, 20200 W. Dixie Highway, Suite 602, Aventura, Florida 33180.

6. Carlos Fernandez (C. Fernandez) is, on information and belief, a Venezuelan national living in the United States.  He is Vice-Chairman of Kane Beef and one of its officers.  He may be served with process by mailing a summons and copy of this complaint via certified mail, return receipt requested, to his attention at his business address, 9001 Leopard St., Corpus Christi, Texas 78409.

## SUBJECT MATTER JURISDICTION

7. The Court has jurisdiction pursuant to 28 U.S.C. § 1331 because one or more of the Howell Cattle's claims raise violations of a federal law, namely, the Packers and Stockyards Act, 1921, as amended (7 U.S.C. §181 et seq.) (PASA).

8.     The Court has supplemental jurisdiction over Howell Cattle's state law claims pursuant to 28 U.S.C. § 1367(a) because such claims form part of the same case or controversy as its claims under PASA.

### APPLICABLE LAW AND BACKGROUND FACTS.

9.     PASA, the law that forms the basis for Howell Cattle's federal question claims, seeks to preserve the integrity of the livestock, meat, and poultry markets, in part by making sure that packers pay for the cattle they buy.  It does this in a variety of ways, including by requiring a packer to pay for livestock purchased in a cash sale transaction[1] no later than the first business day following the purchase,[2] 7 U.S.C. §228b(a), and by providing security for unpaid amounts in the form of a statutory trust consisting of "all inventories of, or receivables or proceeds from meat, meat food products, or livestock products derived" from purchased livestock.  7 U.S.C. §196(b).  The packer is to hold assets "in trust for the benefit of all unpaid cash sellers of such livestock until full payment has been received by such unpaid sellers."  *Id.*  PASA provides a private cause of action for a seller who has been harmed by a packer's violation of these provisions.  7 U.S.C. §209(b).

10.    Under PASA, for an unpaid seller to retain its beneficial interest in a packer's trust assets, it must, within thirty days of the packer's deadline for payment, give written notice to both the packer and the Secretary of Agriculture.  7 U.S.C. §196(b).  The Secretary has designated the Grain Inspection and Packers and Stockyards Administration (GIPSA)

---

[1] PASA defines a cash sale as "a sale in which the seller does not expressly extend credit to the buyer."  7 U.S.C. § 196(c).  Howell Cattle's sale to Kane Beef were cash sales.

[2] For livestock sold on a grade and yield basis final payment is due before "the close of the first business day following determination of the purchase price."  7 U.S.C. §228b(a).

Page 4

as the division of the United States Department of Agriculture that should receive such notices.

11. Subchapter C of Chapter 148 of the Texas Agriculture Code, also contains prompt-pay and trust provisions for the benefit of unpaid livestock sellers. The prompt-pay deadline is the same as that specified in PASA—the close of the first business day following the purchase. Tex. Ag. Code §148.022. A packer who fails to pay is liable to the livestock seller for the unpaid purchase price, added damages of 12% of the unpaid amount, interest at the highest legal rate, and reasonable attorney's fees. §148.025. In addition, an unpaid seller has a "lien on each animal sold and on the carcass of the animal, products from the animal, and proceeds from the sale of the animal, its carcass, or its products." §148.026(a). This lien "is attached and perfected on delivery of the livestock to the purchaser without further action,"[3] §148.026(b), and "has priority over any other lien or perfected security interest in the animal, its carcass, its products, or proceeds from the sale of the animal, its carcass, or its products."

12. On May 17, 2018, Howell Cattle sold 77 head of "fat cattle" (cattle of a weight suitable for slaughter) to Kane Beef on a "hot weight" grade and yield basis. The total purchase price was determined on May 18 or 21 to be $132,727.90. On May 18, Howell Cattle sold 114 head to Kane Beef on the same basis. The total purchase price for that day's shipments was determined on May 21 to be $201,726.06. These were all cash sales. Under PASA and Texas Agriculture Code chapter 148, subchapter C, Kane's

---

[3] In other words, unlike with a PASA trust lien, and unpaid seller need not file a notice to perfect is lien under Chapter 148, subchapter C. Tex. Ag. Code §148.026(b).

deadline for full payment (the end of the first business day following determination of the purchase price) was probably May 22 for both day's sales. Kane failed to pay by this deadline and, indeed, has not paid as of the filing of this suit. It remains indebted to Howell Cattle for the full purchase price of $334,453.96. Howell Cattle gave timely written notice to Kane Beef and GIPSA as required by PASA to preserve its interest in Kane Beef's trust assets.

13. On information and belief, on the instructions of A. Fernandez, C. Fernandez and Taag (the Fernandez Defendants), Kane Beef converted, transferred, disposed of, commingled with other trust assets, and otherwise dissipated some or all of the trust assets that Kane Beef was to hold for the benefit of Howell Cattle and other unpaid cattle sellers. The Fernandez Defendants and Marquette participated in and benefitted from this conversion and disposal of trust assets. Kane Beef transferred accounts receivables from meat and beef product purchasers to Marquette, which collected the receivables, kept some of the proceeds for itself, and sent the rest back to Kane Beef. Kane Beef spent the money.

## CAUSES OF ACTION

### BREACH OF CONTRACT

14. In breach of the parties' agreement, Kane Beef has failed and refused to pay Howell Cattle for its May 17 and 18, 2018 cattle purchases. The total price based on the agreed "hot weight" grade and yield formula is $334,453.96.

## VIOLATION OF THE FEDERAL AND STATE PROMPT PAY PROVISIONS

15.  As set out above, Kane Beef failed to pay Howell Cattle for the May 17 and 18 cattle purchases by the statutory deadlines set out in 7 U.S.C. §228b(a) and Tex. Ag. Code §148.022.

## CONVERSION OF PASA TRUST ASSETS AND CONSPIRACY TO CONVERT

16.  As described in paragraph 13 and in violation of 7 U.S.C. §196(b), Kane Beef converted some or all of the PASA trust assets that it was holding by transferring them to Marquette.  The converted trust assets included accounts receivable owed by entities that had purchased meat from Kane Beef.  On information and belief, some of the accounts receivable creditors were meat distribution centers owned or controlled by the Fernandez Defendants, the owners and controllers of Kane Beef.

17.  Marquette furthered convert the accounts receivable it received from Kane Beef by collecting them, keeping some of the proceeds (which were trust assets in themselves), and distributing all or part of the remainder to Kane Beef.  The Fernandez defendants agreed to and participated in these actions.

18.  The above actions constituted a conspiracy by and among Kane Beef, Marquette and the Fernandez Defendants to convert trust assets whose beneficial owners were unpaid cattle sellers.

### CONVERSION OF ASSETS SUBJECT TO STATE STATUTORY LIEN FOR UNPAID LIVESTOCK SELLERS AND CONSPIRACY TO CONVERT

19. The facts set out in paragraphs 13 and 17-19 also support claims against Kane Beef, Marquette and the Fernandez Defendants for conversion and conspiracy to convert assets subject to the statutory lien created by Tex. Ag. Code §148.026(a).

### BREACH OF FIDUCIARY DUTY

20. Kane Beef owed a fiduciary duty to unpaid cattle sellers to hold statutory trust assets for the benefit of unpaid cattle sellers. The Fernandez Defendants, by virtue of their ownership and/or control of Kane Beef, owed the same duty. They breached their duties by converting, transferring, and otherwise disposing of the trust assets.

### FRAUD

21. Kane Beef defrauded Howell Cattle by knowingly concealing from Howell Cattle its ongoing conversion and dissipation of trust assets. Kane Beef had a duty to advise Howell Cattle of this fact, but deliberately remained silent. This duty to speak arose in part from Kane Beef's duty to hold trust assets for Howell Cattle's benefit in the event of non-payment. Kane Beef's deliberate silence in the face of its duty to speak was the equivalent of a false representation. If Howell Cattle had known the facts regarding Kane Beef's trust assets, it would not have made the May 17 and 18 cattle sales to Kane Beef and would not have lost the value of its cattle.

### JOINT AND SEVERAL LIABILITY

22. Each defendant is jointly and severally liable for Howell Cattle's damages because, among other reasons, they acted together to cause those injuries.

**REQUEST FOR JUDICIAL FORECLOSURE OF HOWELL CATTLE'S INTEREST IN PASA TRUST ASSETS AND ASSETS SUBJECT TO THE TEXAS STATUTORY LIEN IN FAVOR OF LIVESTOCK SELLERS**

23. Howell Cattle requests that the Court order foreclosure of its interests in all Kane Beef assets covered by 7 U.S.C. §196(b) and Tex. Ag. Code §148.026. To the extent some or all of such assets are no longer identifiable as such, Howell Cattle requests that foreclosure of its interest extend to all assets into which such trust/lien assets can be traced.

**REQUESTS FOR PRELIMINARY INJUNCTION**

24. Pursuant to Federal Rule of Civil Procedure 65 and other applicable law, Howell Cattle requests a preliminary injunction enjoining the defendants:

    a. to immediately identify, gather and segregate all assets (specifically including the proceeds of accounts receivable) that constitute trust assets under 7 U.S.C. §196(b) and all assets subject to liens held by unpaid cattle sellers pursuant to Tex. Ag. Code §148.026(a) (collectively, the Subject Assets);

    b. for Kane Beef to hold and not to transfer, spend or otherwise dispose of the Subject Assets pending the conclusion of this case, although permitting activities necessary in the normal course of business to capture and preserve the value of the Subject Assets, such as slaughtering livestock, selling meat and other beef products, and timely collecting accounts receivable. However, proceeds from the sale of meat and other beef products, including cash and accounts

receivable collections should be preserved and not spent or otherwise disposed of.

c. For Kane Beef to file with GIPSA and the Court every two weeks, beginning two weeks following the issuance of the preliminary injunction, a report setting forth the steps taken to identify and gather the Subject Assets, and the current value and location of each category of Subject Assets (including the categories of live cattle, meat and other beef products, cash, accounts receivable, and receivable collections). A Kane Beef representative with knowledge of the facts underlying the report should swear to the report's completeness and accuracy.

25. Howell Cattle will probably be irreparably harmed if the requested preliminary injunction is not granted. Howell Cattle will probably prevail at trial; by then, however, Kane Beef will very probably be unable to satisfy a money judgment and the Subject Assets securing payment of Kane Beef's debt to Howell Cattle will probably have been dissipated. On information and belief, Kane Beef is insolvent, unprofitable and its cash flow is inadequate to fund its operations. Its debt to unpaid cattle feeders totals approximately $35 million. It also owes tens of millions of dollars to other creditors. Monthly interest payments alone are difficult for it to meet. It is only able to continue as a going concern by borrowing additional money and incurring additional debt. Given its circumstances, Kane Beef is highly unlikely to keep its doors open until trial.

## PRAYER

26. Howell Cattle requests:

    a. A preliminary injunction granting the relief set out in paragraph 24;

    b. Judicial foreclosure of the Subject Assets and distribution to Howell Cattle of its share of the proceeds of such Assets pursuant to PASA, Tex. Ag. Code ch. 148, subch. C, and other applicable law;

    c. A money judgment for $334,453.96, the entire amount Kane Beef's debt to Howell Beef;

    d. Statutory damages in the amount of $40,134.47 (12% of $334,453.96) pursuant to Tex. Ag. Code §148.025;

    e. The highest legal rate of interest on Kane Beef's unpaid debt;

    f. Reasonable attorney's fees;

    g. And such other relief to which Howell Cattle may show itself justly entitled

Respectfully submitted,

_____
Robert I. Howell
Texas Bar No. 10107300
Southern Dist. Attorney No. 4729
Attorney for Howell Cattle Company, LP
4104 Burney Dr.
Austin, Texas 78731-1350
Phone: 512-922-1913
Email: robert.howell@howelladr.com

## CERTIFICATE OF SERVICE

Counsel for all parties who have already entered an appearance herein have been served via the Court's electronic filing system

_____
Robert I. Howell